**GEORGE FAIIVAE and FA'ANENEFU FAIIVAE, Plaintiffs,**

**v.**

**VIAVIA TIUMALU, Defendant**

No. 8-1959

High Court of American Samoa

Civil Jurisdiction, Trial Division

June 26, 1959

ARTHUR A. MORROW, *Chief Judge;* APE, *Associate Judge;* and FAUMUINA, *Temporary Associate Judge.*

OPINION AND ORDER

Heard at Fagatogo on May 7, 1959

George Faiivae and Fa'anouefu *pro se.*

Asosu, counsel for Viavia Tiumalu.

## OPINION OF THE COURT

MORROW, *Chief Judge.*

On April 21, 1959 plaintiffs, who are husband and wife, filed their petition praying for an order requiring the defendant to vacate the Moonlight Bar located in Fagatogo. The building called the Moonlight Bar is a beer joint and dwelling house combined in which the defendant and his family reside and in which he operates a beer joint as a business enterprise. The building was erected as a dwelling house in 1936 by the plaintiffs for a home for themselves at a cost of about $1800. They made their home in it until December 17, 1947, three of their children being born there. Prior to the hearing, the Court viewed the premises in the presence of the parties and counsel for the defendant.

Viavia and his brother Faamao, who had been operating a beer joint together at another location, severed business relations in 1947 and Viavia was looking around for another location where he could operate a beer joint for himself. The plaintiffs were planning to leave their home for Honolulu at about that time. It was arranged between them that Viavia should have their house for his planned beer joint.

On December 17, 1947, plaintiff George Faiivae went to the Attorney General's office and had a document drawn up designated a "Letter of Authorization" which when signed and witnessed read as follows:

### "LETTER OF AUTHORIZATION"

"December 17, 1947.

"I, GEORGE FAIIVAE of Fagatogo, Tutuila, American Samoa, do hereby authorize my cousin-in-law VIAVIA TIUMALU of Fagatogo, Tutuila, American Samoa, to occupy my dwelling located at the village of Fagatogo, Tutuila, American Samoa, and on the communal land of the matai TUPUOLA. The said Viavia Tiumalu is not

to be interfered with in any way in his use and occupation of the aforesaid dwelling. He is to have complete charge and supervision of the said dwelling while I am away in Honolulu.

/s/ George Faiivae
George Faiivae

"WITNESSED:

"/s/ S. Fesagaiga
"/s/ Ernest Reid"

He gave a carbon copy of it, signed by himself and witnessed by the same witnesses as the original, to Viavia which Viavia thereupon accepted and kept. Viavia had the copy in his files at the trial and produced it at the instance of the Court. Both the original and the copy were introduced in evidence. However, about eight years ago, and after he had had the copy some three years, Viavia, according to his own admission on the witness stand, altered the copy by crossing out the word "TUPUOLA" in the fourth line and writing in above it "TIUMALU." The circumstances indicate that this was an alteration not made for a good purpose, since it was done here in Samoa while the plaintiffs were in Honolulu and also because as altered it would appear that the building was on Tiumalu land and not Tupuola land as indicated in the Letter of Authorization. Viavia is a member of the Tiumalu Family while plaintiff Fa'anenefu is the blood daughter of Afoa Tupuola.

 Any contention by Viavia that he was not bound by the Letter of Authorization because he did not sign it is without merit. "Parties may become bound by the terms of a contract even though they did not sign it, where their assent is otherwise indicated." 12 Am.Jur. 551. In this case the fact that Viavia accepted the signed copy from plaintiff George Faiivae, put it away in his files, and kept it there

404

for over 11 years together with the fact that he immediately took possession of the house and proceeded to put it in condition for use as a beer joint shows that he assented to its terms. Even the fact that he altered it some years later so as to make it appear that the house was on Tiumalu Family land instead of Tupuola land as stated in the document before alteration shows that he considered himself bound by its terms; otherwise there would have been no point in making the alteration.

■ We think that the Letter of Authorization created a relationship of licensor and licensee.

It developed at the trial that when the house was turned over to Viavia in December, 1947 by the Faiivaes, Viavia handed over to them $1,000, paid them $150 for some furniture that was in the house, and in addition made a gift to them of $40. Viavia and Fa'anenefu are brother and sister through adoption faa-Samoa by Motia and his wife Tafunsina. This no doubt accounted for the $40 gift.

The Faiivaes went to Honolulu in June, 1948 and returned to Tutuila from Honolulu in December, 1958. They asked Viavia in February of this year for the return of the house to them. He refused, claiming that the house was his own.

The Letter of Authorization, it will be observed, makes no mention of the $1,000 or the $150 paid for the furniture. At the hearing Viavia testified that the $1,000 was a loan to the Faiivaes which was to be repaid in installments and if it should not be repaid within ten years, which it was not, then the house was to be his. Fa'anenefu had two different versions of the transaction with respect to the $1,000. First, she testified that it was an out and out gift from Viavia to the Faiivaes, made because of the relationship of Viavia and Fa'anenefu through the adoption of them faa-Samoa by Motia and his wife. Later she testified that the $1,000 was in return for the use of the house by

405

Viavia as a beer joint while she and her husband should stay in Honolulu. It is a matter of some significance that Viavia never at any time asked the Faiivaes for a single one of the installments which he claimed were to be paid. The Letter of Authorization makes no mention of a sale of the house upon a condition; it limits the time that Viavia is to have charge and supervision of it to the period that George Faiivae is "away in Honolulu."

We think in view of all the evidence that the clear weight of the evidence is to the effect that the $1,000 was paid for use of the house by Viavia as a beer joint during such time as George Faiivae should be in Honolulu and that it was to be returned to him.

After the house was turned over to Viavia in December, 1947 and prior to the departure of the plaintiffs for Honolulu in June, 1948, Viavia, with the knowledge of the plaintiffs and without objection by them, made some extensive alterations in the house and enlarged it by extending the porch so that it could be used as a beer joint. Later he added a room on the east side of the house. He also made a number of extensive repairs on the house in order to keep it in good condition, such as replacing the joists when they rotted due to termites and high humidity. He spent over $500 in repainting alone. Due to the addition of the room and extension of the porch, the house is more valuable than it would have been otherwise. Also the painting and extensive repairs, all at the expense of Viavia, have kept it in good condition. Without the paint and repairs, it would have deteriorated very seriously during the eleven years plaintiff George Faiivae was in Honolulu and been worth much less for use as a dwelling house than it is now.

We think also in view of the provision in the Letter of Authorization that Viavia was "to have complete charge and supervision of said dwelling" while plaintiff George Faiivae was "away in Honolulu" and the further

fact that the parties intended that the house should be used as a beer joint, that the repairs, painting, additions, and alterations were impliedly authorized by the plaintiff George Faiivae; also that since Viavia, in addition to paying the plaintiffs $1,000, has kept the house in good condition and made it more valuable through additions and alterations he is entitled to have the equivalent in value through the use of the property.

We could, of course, order the defendant to vacate the Moonlight Bar at once. Under those circumstances we think that justice would require us at the same time to order the plaintiffs to pay the defendant an amount equal to the excess of what he has expended on the premises and the $1,000 over the value of his use of the premises. However, it is usually impracticable for a court to order a Samoan to pay another Samoan any substantial amount of money because usually the Samoan is execution proof as to personal property and also for the reason that the real property of a Samoan cannot be taken on execution.

Under circumstances in many ways similar to those in this case, where a licensee expended money in erecting a house on land of another with the permission of the other, the Court, in an action to evict the licensee from the land while holding that the license, despite the expenditure of money in reliance thereon, was revocable, nevertheless held that the licensee could not be required to vacate the land until such time as the value of his use of the land compensated him for his expenditures in reliance upon the license less the value of the materials in the house when taken down. *Lutu, Afoa, Tupua and Taesali Families v. Se'ese'ei Petele*, No. 15-1956 (H.C. of Am. S.).

And in a number of cases where a Samoan has been permitted by a Samoan to put in his plantations on another Samoan's land, and he has expended much time and labor in putting in the plantations, and the owner has sought an

order from the Court requiring him to vacate the land used for the plantations, the Court has ruled that he may continue to occupy and use the land for plantation purposes until the value of its use will compensate him for his labor and expenditures in reliance on the license or permission, nevertheless leaving the plantation in an unharmed condition when the eviction order becomes effective. *Vaimaona Family of Laulii v. Moafou et al.*, No. 8-1956 (H.C. of Am. S.); *T. Magalei et al. v. R. S. Tago Sianava*, No. 23-1955 (H.C. of Am. S.).

In view of the circumstances in this case, and applying the principle applied in the cases cited, we think that justice will be attained if, after setting off the value of the use of the premises by the defendant as against his expenditures for upkeep, repairs, painting, additions and improvements and the $1,000 paid to the plaintiffs prior to their departure for Honolulu, the defendant is permitted to continue to use the Moonlight Bar for dwelling purposes and as a beer joint until February 1, 1960, without damaging the building or removing any part of it.

## ORDER

Accordingly, the defendant Viavia Tiumalu is hereby ORDERED to vacate the Moonlight Bar by February 1, 1960, leaving it in an undamaged condition and without any part of the building as it now stands removed from it. If he should damage the building in any way or remove any part of it prior to vacating it, the plaintiff George Faiivae may take such legal action as the facts may warrant.

Costs in the sum of $8.33 are hereby assessed against Viavia Tiumalu and a like sum ($8.33) against George Faiivae. All costs are to be paid within 15 days.